UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MELANIE LONG for I. P. L., a minor child,<br><br>Petitioner,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,[1]<br><br>Respondent. | Case No.: 1:18-cv-00288-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Melanie Long's Petition for Review (Dkt. 1), appealing the Social Security Administration's final decision finding her minor child I.P.L.[2] not disabled and denying the child's claim for supplemental security income benefits. *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On September 5, 2014, an application for supplemental security income was protectively filed on behalf of the Claimant, I.P.L.[3] (AR 15.) The application alleged disability beginning July 20, 2009. (*Id.*) The claim was denied initially on November 13, 2014 and then again on

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

[2] This decision is consistent with the privacy protection measures outlined in Federal Rule of Civil Procedure 5.2 requiring all court filings to use a minor's initials rather than his or her name.

[3] Because Petitioner Melanie Long brings this action on behalf of her minor child, whose alleged disability is at issue, this Decision distinguishes between "Petitioner" (Mrs. Long) and the "Claimant" (I.P.L.).

**MEMORANDUM DECISION AND ORDER – 1**

reconsideration on February 18, 2015. (*Id.*) On May 6, 2015, a Request for Hearing before an Administrative Law Judge ("ALJ") was timely filed. (*Id.*) Petitioner and Claimant both appeared and testified at a hearing held on March 1, 2017 before ALJ Stephen Marchioro in Boise, Idaho. (*Id.*) Impartial medical expert Dr. Robert E. Pelc also appeared and testified at the hearing. (*Id.*)

On June 28, 2017, the ALJ issued a Decision denying Claimant's claim, finding that Claimant was not disabled within the meaning of the Social Security Act. (AR 33.) Review was timely requested from the Appeals Council on Claimant's behalf on or about August 25, 2017. (AR 184.) On May 23, 2018, the Appeals Council denied Claimant's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Claimant's administrative remedies having been exhausted, Petitioner timely filed the instant action on Claimant's behalf, arguing that "[t]he decision denying Petitioner's claim is not in accordance with the purpose and intent of the Social Security Act, nor is it in accordance with the law, nor is it in accordance with the evidence, but contrary thereto and to the facts and against the evidence, in that Petitioner[4] is disabled from performing substantial gainful activity." Pet. for Review 2 (Dkt. 1). Petitioner contends the ALJ erred by relying on the opinion of a non-examining psychologist over Claimant's treating provider, by ignoring evidence of a significant chromosome abnormality while analyzing the functional domains, and by rejecting Petitioner's testimony without providing clear and convincing reasons. *See generally* Pet'r's Mem. ISO Pet. for Review (Dkt. 14). Petitioner asks for reversal and an order remanding for an immediate award of benefits. *Id.* at 20.

---

[4] So in original. At issue is whether Claimant, not Petitioner, is disabled.

**MEMORANDUM DECISION AND ORDER – 2**

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir.

2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. <u>DISCUSSION</u>

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act. For individuals under the age of 18, this is a three-step sequential evaluation process. 20 C.F.R. § 416.924(a).

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of his medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Claimant did not engage in substantial gainful activity during the period from the application date of September 5, 2014 through the date of the ALJ's decision. (AR 18.)

**MEMORANDUM DECISION AND ORDER – 4**

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). For claimants under the age of 18, an impairment or combination of impairments is not "severe" within the meaning of the Social Security Act if it "is a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." 20 C.F.R. § 416.924(c). If a claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *Id.* Here, the ALJ found that Claimant has the following severe impairments: "communication (language and speech) disorder and unspecified neurocognitive disorder (central auditory processing disorder)." (AR 18.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet, medically equal, or functionally equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. § 416.924(d)(1). If a minor claimant's impairments neither meet nor equal a listed impairment, the claimant is deemed not disabled. 20 C.F.R. § 416.924(d)(2). To determine whether an impairment or combination of impairments functionally equals a listing, the ALJ must assess the claimant's functioning in terms of six separate domains: (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being. 20 C.F.R. § 416.926a. Marked limitation in two domains or extreme limitation in one domain mandates a finding that the claimant is disabled. 20 C.F.R. § 416.926a(a).

Here, after a lengthy discussion, the ALJ found that Claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled the severity of one of the listed impairments. (AR 19–33.) Based on that finding, the ALJ ultimately concluded that Claimant "has not been disabled, as defined in the Social Security Act, since September 5, 2014, the date the application was filed." (AR 33.)

**B.     Analysis**

Petitioner raises three primary issues with the ALJ's decision. First, she argues the ALJ erred by relying on the opinion of a non-examining psychologist over Claimant's treating provider. Second, she argues the ALJ erred in his analysis of the functional domains by ignoring evidence of a significant chromosome abnormality. Third, she argues the ALJ erred by rejecting Petitioner's testimony without providing clear and convincing reasons. *See generally* Pet'r's Mem. ISO Pet. for Review (Dkt. 14). Each assignment of error will be addressed in turn.

**1. The ALJ Did Not Err in Weighing Psychological Opinions of Record.**

Petitioner contends the ALJ erred by relying on the opinion of a non-examining psychologist over Claimant's treating provider. *Id.* at 8–12. She argues that the impartial medical expert Dr. Pelc, who did not examine Claimant, ignored significant medical records and his opinion was therefore necessarily incomplete or inaccurate. Accordingly, Petitioner argues, it was error for the ALJ to rely on Dr. Pelc's opinion. She specifically argues that Dr. Pelc is not a specialist in the fields of child psychology, pediatrics, or genetics and that his failure to mention Claimant's diagnosis of Klinefelter syndrome drastically reduces the probative value of his opinion. She does not identify specific components of Dr. Pelc's opinion with which she disagrees; her argument is that the opinion is not entitled to the weight the ALJ gave it because it ignores relevant medical evidence.

**MEMORANDUM DECISION AND ORDER – 6**

Petitioner contrasts Dr. Pelc's opinion with the opinions of various treating clinicians who opined that Claimant was significantly limited as compared to his peers. Most significantly, she notes that certified physician assistant Julie Scott, who is Claimant's primary care provider and whose opinion the ALJ rejected, opined that Claimant suffers from "significant difficulty with impulse control, listening, following directions that he doesn't want to follow, and is constantly in motion." (AR 710–711.) Her opinion, which she rendered after the ALJ hearing but before the ALJ issued his decision, also indicated that Claimant had recently been diagnosed with 47,XXY Klinefelter syndrome.

The ALJ rejected Ms. Scott's opinion because she is not a mental health specialist; because she is not trained in testing for autism spectrum disorders, impulse control disorders, attention deficit hyperactivity disorders, or communication/language/speech disorders; because she is not familiar with the Social Security listing of impairments; because her opinion is inconsistent with the objective medical evidence; and because her opinion appeared to be based in part on the allegations of Claimant's mother. (AR 26.)

Petitioner contends that Ms. Scott's opinion is consistent with the entire record, the ALJ's finding to the contrary notwithstanding. She cites the opinion of Dr. Brad Levitt, Psy.D., who examined Claimant in November 2016 and opined that Claimant was somewhat hyperactive, aloof, and impulsive and that Claimant had difficulty related to sustaining accuracy throughout the testing. (AR 426–430.) She also cites the opinion of Dr. Tosha Strickland, an audiologist who examined Claimant in November and December 2016 and opined that Claimant quickly fatigued with testing, had a melt-down, and could not complete all the testing. (AR 439.)

Petitioner accurately states the standard for how ALJs must weigh medical opinion evidence: opinions from treating sources are generally entitled to greater weight than opinions

from non-treating sources, and opinions from medical sources who examine a claimant are generally entitled to greater weight than opinions from medical sources who did not examine a claimant. 20 C.F.R. § 416.927(c)(1), (2). An ALJ must provide "clear and convincing" reasons to reject a treating provider's uncontradicted opinion, and "specific and legitimate" reasons to reject a treating provider's opinion when it is contradicted. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983); *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). The same standards apply when an ALJ rejects an examining provider's opinion. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1454 (9th Cir. 1984).

Petitioner criticizes any reliance upon non-examining expert psychologist Dr. Pelc because he is not a pediatrician having a specialization or expertise in child psychology or genetics. Pet'r's Mem. ISO Pet. for Review 9 (Dkt. 14). But Dr. Pelc's curriculum vita indicates that he provides "therapy and evaluation services with children, adolescents, and adults," that his "evaluation services emphasize child custody" (among other matters), that his Ph. D. course of study included a minor in child development, that he has previously been court appointed as a family children investigator, and that he was previously a consultant for a children's advocacy center. (AR 387.) He has also given presentations involving assessing allegations of child sexual assault, child custody evaluations, and the special needs of disruptive adopted children. (AR 389.) Moreover, counsel did not object to the admission of Dr. Pelc's curriculum vita into the record. (AR 47.) Due to the extensive history working with matters of child psychology outlined in Dr. Pelc's curriculum vita, and the fact that there was no objection to Dr. Pelc serving as a medical expert at the hearing, there is substantial evidence supporting the ALJ's decision to

treat him as a qualified expert in this domain. His decision will not be overturned on the basis that Dr. Pelc was unqualified to render an opinion.

The Court's next task is to consider the relative weight the ALJ assigned to the opinions of treating provider Ms. Scott, PA-C, and non-examining medical expert Dr. Pelc.[5] There are dividing points imposed by Social Security regulations, and relevant here Ms. Scott's role as a certified physician assistant excludes her from the list of "acceptable medical sources" as of the filing date,[6] despite the fact that she was Claimant's primary care provider. 20 C.F.R. § 416.902(a)(8). The weight to be given to her opinions under Social Security guidelines, therefore, is a bit of a moving target, as described here:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because … "acceptable medical sources" "are the most qualified health care professionals." However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. For example, it may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinion. Giving more weight to the opinion from a medical source who is not an "acceptable medical source" than to the opinion from a treating source does not conflict with the treating source rules….

---

[5] Although Petitioner's memorandum refers also to opinions by examining providers Dr. Levitt, Psy.D., and Dr. Strickland, Au.D., Petitioner does not challenge the ALJ's weighing of such opinions. She merely cites these opinions as consistent with Ms. Scott's opinion. Therefore, a separate analysis of whether the ALJ erred with respect to the opinions of Drs. Levitt and Strickland will not be undertaken in this decision.

[6] Certified physician assistants are acceptable medical sources for impairments within their licensed scope of practice for claims filed on or after March 27, 2017. 20 C.F.R. §§ 416.902(a)(8), 416.325. Claimant's claim was filed September 5, 2014, more than two years prior to this change. For such claims, certified physician assistants are not acceptable medical sources.

**MEMORANDUM DECISION AND ORDER – 9**

SSR 06-03P, 2006 WL 2329939 at *5 (Aug. 9, 2006).

The ALJ gave Ms. Scott's opinion little weight because she was not a mental health specialist, was not trained in the relevant disorders, was unfamiliar with the Social Security listing of impairments, and her opinion was inconsistent with the evidence and appeared to be based on Petitioner's subjective allegations. (AR 26.) Nothing in Petitioner's argument persuades the Court that the ALJ's weighing of Ms. Scott's opinion was improper or unsupported by substantial evidence. Even though Ms. Scott was not an acceptable medical source, the ALJ could have found Ms. Scott's opinion more probative and afforded it greater weight than the opinion of Dr. Pelc given the circumstances described in SSR 06-03P. But he was not obliged to do so. Indeed, he was required to evaluate both opinions following Social Security regulations as outlined in 20 C.F.R. § 416.927(c) and SSR 06-03P. But the ALJ determined that Dr. Pelc's opinion was more probative than Ms. Scott's, and therefore gave it greater weight. Petitioner has not shown that he erred in doing so.

Petitioner contends that Ms. Scott's opinion was consistent with the entire record, but she does not persuade this Court, which acts in a reviewing capacity, how the ALJ's finding to the contrary is unsupported by substantial evidence. It is the ALJ's duty ultimately to resolve conflicting evidence, *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The Court is not persuaded that the ALJ erred in his assessment of Ms. Scott's opinion against the rest of the record.

Nor has Petitioner shown that the ALJ's reliance on Dr. Pelc's opinion was improper. As stated in the decision, Dr. Pelc had the benefit of a longitudinal review of Claimant's entire medical history. Petitioner contends that Dr. Pelc "completely ignored the evidence of auditory processing disorder, a component of Klinefelter." Pet'r's Mem. ISO Pet. for Review 10 (Dkt.

**MEMORANDUM DECISION AND ORDER – 10**

14). She specifically notes that "there is no evidence that Dr. Pelc considered the audiology report found in Exhibit 12F [AR 431–439] as his notes contain no reference to those records." *Id.* But Dr. Pelc received Exhibit 12F (AR 51–52) and he answered "yes" to a medical interrogatory asking, "Have you read the evidence we furnished to you?" Hand-written nearby is the text "1F–22F Numerous exhibits related to educat. records." (AR 701.) And, regardless of what Dr. Pelc took away from his consideration of such records as to any auditory issues, the ALJ added to Claimant's severe impairments the "unspecified neurocognitive disorder (central auditory processing disorder)," precisely as the audiologist had diagnosed. (AR 18, 439.)

As to Klinefelter syndrome, such a diagnosis does not lead directly to a determination that a child claimant is disabled. Rather, whether a child claimant with Klinefelter syndrome is disabled depends on whether the effects of the syndrome result in an impairment that, "either alone or in combination with another impairment(s), … meet or medically equal the criteria of a listing in an affected body system(s)." SSR 14-3P, 2014 WL 2472009 at *8 (June 2, 2014). That analysis involves consideration of whether the mental disorders listings (112.00) are met. The ALJ undertook precisely such an analysis in this case: "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 112.02, 112.08, 112.10, or 112.11." (AR 19.)

Ultimately, Petitioner has not shown that the ALJ's weighing of the psychological opinions of record was unsupported by substantial evidence or that he otherwise erred with respect to this issue. The ALJ's decision will not be reversed on such a basis.

   **2. The ALJ Erred When Analyzing Whether Claimant's Impairments Functionally Equal a Listing.**

Petitioner contends that the ALJ erred in assessing whether Claimant's impairments functionally equal the listings in the domains of acquiring and using information, attending and

**MEMORANDUM DECISION AND ORDER – 11**

completing tasks, and caring for Claimant's self. Functional equivalence to a listing is shown when a claimant suffers from "marked" limitation in two domains of functioning or "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). Social Security regulations describe "marked" and "extreme" limitations, in part, as follows:

> We will find that you have a "marked" limitation in a domain when your impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme." It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean.
> ….
> We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

20 C.F.R. § 416.926a(e)(2)(i), (e)(3)(i).

The ALJ found Claimant has no limitation in the domains of moving about and manipulating objects (AR 31) and health and physical well-being (AR 33); less than marked limitation in the domains of acquiring and using information (AR 27), attending and completing tasks (AR 28), and caring for one's self (AR 32); and marked limitation in the domain of interacting and relating with others (AR 30).

Petitioner challenges the ALJ's findings with respect to the functional domains of acquiring and using information, attending and completing tasks, and caring for one's self. Pet'r's Mem. ISO Pet. for Review 12–18 (Dkt. 14). With respect to the domain of acquiring and

**MEMORANDUM DECISION AND ORDER – 12**

using information, Petitioner argues that the ALJ apparently ignored most of Claimant's educational records, including two Individualized Education Plan ("IEP") assessments indicating Claimant's academic performance lagged standard expectations by more than one grade level across multiple subjects. She also points out that audiology testing indicated that Claimant's "talker advantage score on the LiSN-S was outside of 2 standard deviations and is an indication of [Claimant's] low concentration ability during the testing when [Claimant] is saturated with auditory stimulus. [Claimant] is not able to tolerate these conditions well and overall affects [Claimant's] ability to learn in a noisy environment." (AR 439.) Petitioner interprets the audiology testing results – which resulted in a diagnosis of central auditory processing disorder that the ALJ characterized as a severe impairment – as evidence that Claimant has marked limitation in the ability to concentrate and acquire knowledge. She holds up Claimant's lack of progress in school as further evidence of this.

The ALJ's assessment of Claimant's function in this domain was that:

> The claimant has less than marked limitation in acquiring and using information. The claimant achieved a full-scale IQ score of 80 and was observed to have overall cognitive abilities in the average range. The claimant was observed to speak using complex language during a psychological examination, but [Claimant] did have problems with grammar. It was also observed that the claimant has some weakness in expressive language, but [Claimant] only scored one and a half standard deviations below the mean in expressive language. Additionally, [Claimant] was observed to have intact memory and logical thought process (Exhibits IF; 2F; 3F; 4F; 8F; I IF).

(AR 27–28.)

The ALJ did not discuss Claimant's progress in school. This is notable because "school records are often a significant source of information about limitations in the domain of 'Acquiring and using information.' Poor grades or inconsistent academic performance are among the more obvious indicators of a limitation in this domain…" SSR 09-3P, 2009 WL

396025 at *3 (Feb. 17, 2009). Thus, where school records evidence limitations in this domain that are inconsistent with the ALJ's finding, it cannot be said that the finding is based on substantial evidence if the ALJ does not discuss any reasoning for ignoring or discrediting such records.

In this case, Petitioner's arguments are supported by the contents of Claimant's academic records contained in the record: Halfway through first grade, objective reports indicate that Claimant was reading at a beginning kindergarten level and struggling with kindergarten sight words, would "shut down" when asked to write and spell out grade-level words, struggled with grade-level math problems, and required specialized instruction. (AR 272–275.) During second grade, Claimant was able to read kindergarten sight words with only 59% accuracy and was only 45% accurate with word problems and 68% accurate with adding and subtracting numbers through 15. (AR 672–673.) The ALJ failed to discuss – or even cite – these records in his assessment of the functional domain of acquiring and using information. Given the substance of such records, the ALJ's failure constitutes reversible error.

Moreover, audiology testing identified that, as to one component of Claimant's listening ability (the "talker advantage score on the LiSN-S" test instrument), Claimant scored two standard deviations outside the norm. (AR 439.) The audiologist said the score indicated Claimant's "low concentration ability during the testing when [Claimant] is saturated with auditory stimulus." (*Id.*) Thus, the audiologist tied the hearing deficits directly to a functional limitation. Because a marked limitation "is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean," 20 C.F.R. § 416.926a(d)(2)(i), it was error for the ALJ to find less

than marked limitation in this functional domain without addressing the audiologist's findings.[7] This error is grounds for granting Petitioner's petition and remanding the case.

Petitioner also argues the ALJ erred in assessing Claimant's functional limitations with respect to attending and completing tasks. Pet'r's Mem. ISO Pet. for Review 13–15 (Dkt. 14). She cites various evidence of record supporting her contention that Claimant is markedly limited in this domain. She also suggests that the ALJ did not cite to specific records to support his decision that Claimant's limitations in this domain were less than marked.

The ALJ found that:

> The claimant has less than marked limitation in attending and completing tasks. During one evaluation, it was observed that the claimant's motivation waxed and waned. At times, the claimant was very concerned with … answers being correct. At other times, [Claimant] said [Claimant] was tired and asked [to] be done. The consultative examiner observed that the claimant responded positively to occasional mild redirection, and … displayed an appropriate level of energy without hyperactive behaviors. Additionally, another examiner observed that the claimant showed some signs of hyperactivity and impulsivity, but … was able to persist through testing. Further, the claimant was observed to have normal attention and concentration. The claimant also showed improvement with treatment (Exhibits 4F; 3F; 8F; 11F; 20F; 21F). Accordingly, while the claimant does have limitation in this domain, that limitation does not seriously interfere with the claimant's ability to attend and complete tasks.

(AR 28–29.)

Although the ALJ did not cite to specific pages of the record when making these findings, his representations of the contents of the record are nonetheless accurate; the exhibits he cited do contain the information to which he refers and they generally support his findings. Petitioner's

---

[7] A medical record containing a standardized score greater than two standard deviations below the mean does not, ipso facto, mean the ALJ must find a marked limitation; in appropriate cases the ALJ may find the score does not pertain to a functional limitation, is invalid, or is otherwise not entitled to controlling weight. Thus, this Court does not find that Claimant is markedly limited in the domain of acquiring and using information. The Court concludes only that the ALJ's finding that Claimant is less than markedly limited in this domain is not supported by substantial evidence.

**MEMORANDUM DECISION AND ORDER – 15**

argument on this point amounts to a disagreement with the ALJ's interpretation of the evidence. But it is the ALJ's duty to resolve conflicts or inconsistencies in the record, and the ALJ's decision must be upheld if it is supported by substantial evidence. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Although Petitioner interprets the evidence differently than the ALJ did, she has not shown that the ALJ's interpretation is unsupported by substantial evidence. Therefore, this Court cannot conclude the ALJ erred in his findings with respect to the functional domain of attending and completing tasks.

Finally, Petitioner argues the ALJ erred in assessing Claimant's functional limitations in the domain of caring for one's self. Pet'r's Mem. ISO Pet. for Review 16–18 (Dkt. 14). She again cites record evidence supporting her interpretation that Claimant is markedly limited in this domain, and she again challenges the ALJ's decision for being too general in this regard.

The ALJ stated:

> The claimant has less than marked limitation in the ability to care for [Claimant's] self. While the claimant's mother reported some difficulties in this area, she also indicated that the claimant is generally able to feed, dress, bath, and use the toilet independently. Additionally, although the claimant's mother reported mental breakdowns and screaming on a daily basis, the claimant was generally able to regulate [Claimant's] self during the psychological examinations. Specifically, it was observed that the claimant's activity and behavior were well regulated. It was also noted that [Claimant] offered information and asked questions regarding the interviewer. Moreover, school records and treatment records note improvement with regulation and emotional outbursts. Further, the claimant only scored one standard deviation below the mean for overall adaptive behavior (Exhibits 2F; 4F; 11F; 14F; 22F).

(AR 32.)

Once again, the exhibits the ALJ cited do contain the evidence he represents that they contain. And, once again, Petitioner's argument asks this Court to reweigh the evidence, which is disallowed under the applicable standards. Because Petitioner has not shown error in the

**MEMORANDUM DECISION AND ORDER – 16**

ALJ's finding that Claimant has less than marked limitation in the ability to self-care, her petition will not be granted on this basis.

However, as described above, Petitioner has shown that the ALJ erred in his assessment of the functional domain of acquiring and using information. Her petition will be granted on that basis. The proper remedy for that error is remand for further proceedings.

### 3. The ALJ Did Not Err in Rejecting Petitioner's Testimony.

Petitioner contends the ALJ erred by rejecting Petitioner's opinion without providing clear and convincing reasons. Pet'r's Mem. ISO Pet. for Review 18–20 (Dkt. 14). She argues the ALJ's assessment of her testimony was improper because he "delv[ed] into wide-ranging scrutiny of her character and apparent truthfulness" and he judged her for her involvement in "contentious child custody proceedings with Claimant's father."

The ALJ noted "significant inconsistencies between the claimant's mother's allegations regarding the claimant's impairments and functioning and the objective medical evidence." (AR 21.) He specifically noted, at some length, Petitioner's repeated claims to various medical providers that Claimant has autism despite multiple psychological evaluations which did not show concern for autism. He referred to evidence of record that "testing showed non-spectrum results and it was noted that the claimant's performance on testing suggested a wide range of skills that would be uncommon for a child with autism spectrum disorder." (AR 21–22.) He further noted that "to the extent that there is a diagnosis related to autism from an acceptable medical source, it is that the claimant does not suffer from this condition." (AR 22.) He recounted the concern of a nurse practitioner who met with Petitioner that Petitioner "may be seeking some type of secondary gain" in relation to the autism diagnosis. (AR 22, 650.) All of

these factors support the ALJ's finding that Petitioner's "continued allegations of autism spectrum disorder are inconsistent with the objective medical evidence." (AR 22.)

The ALJ also referred, as Petitioner indicates, to "contentious child custody proceedings between the claimant's parents." (AR 22.) But in context, this reference and the rest of the paragraph in which it appears do not evince a judgment about Petitioner's character. Rather, the paragraph details Petitioner's unsubstantiated claims, over a period of years, that Claimant's father abused him. (AR 22–23.) It details Claimant's alleged "full-blown addiction to pornography" that Petitioner "backed off of" when questioned at the hearing and that is not well-supported by objective medical evidence of record. (AR 23.) And it notes that Petitioner indicated Child Protective Services had threatened her due to the number of referrals she had made regarding the father's care of Claimant. (AR 23.) These facts all color Petitioner's credibility and it was not error for the ALJ to acknowledge them.

Petitioner acknowledges that she is not a medical provider and she therefore "described her child's behavior in the best way she knew – labeling him as autistic." Pet'r's Mem. ISO Pet. for Review 19 (Dkt. 14). She says the ALJ criticizes her for continuing to seek an autism diagnosis after several examinations found that Claimant did not meet the criteria, but she says that it was only through her persistence that Claimant was ultimately correctly diagnosed with Klinefelter syndrome. *Id.* She says she was "advocating for her child to get … the help [Claimant] needed, not intentionally attempting to mislead the ALJ or anyone else." *Id.*

That may well be so. But the record nonetheless contains numerous instances, cited by the ALJ, where Petitioner made representations about Claimant's functional limitations or diagnoses that were either inconsistent with, or at least unsubstantiated by, the record. Such representations bear directly on Petitioner's credibility. In some instances, medical providers

**MEMORANDUM DECISION AND ORDER – 18**

expressed their concern that Petitioner may have been exaggerating Claimant's symptoms and limitations, possibly for financial gain, and such facts also imply the possibility of bias. Although the ALJ did not expressly echo such concerns, there is clear implication of such concerns in the three lengthy paragraphs describing his reasoning for not giving Petitioner's testimony greater weight. In short, he provided clear and convincing reasons for finding Petitioner less than credible and rejecting her testimony. Her petition will not be granted on the basis that her testimony was rejected improperly.

## IV. CONCLUSION

Petitioner has shown that the ALJ erred in his assessment of whether Claimant has marked limitation in acquiring or using information. Because Petitioner has shown that the ALJ's decision includes legal error and is not based on substantial evidence, her petition will be granted. The case will be remanded for further proceedings.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED,** and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: September 30, 2019

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge